IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RAUL MEZA, | § | |
| | § | |
| v. | § | A-05-CA-1008 LY |
| | § | |
| BRIAN COLLIER, et al. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Collier's Third Motion to Dismiss (Clerk's Doc. No. 162); Defendant Owens' Motion to Dismiss (Clerk's Doc. No. 130) and Defendants Aliseda, Davis, Denoyelles, Aycock, Garcia, and Gonzales's Motion to Dismiss (Clerk's Doc. No. 150).

## I.   BACKGROUND

On March 9, 1982, Raul Meza pled guilty to murdering a 9 year-old girl and was sentenced to 30 years imprisonment. On September 8, 1989, Meza was sentenced to an additional, consecutive, four years of imprisonment for possession of a deadly weapon in a penal institution. In 1993, Meza was released from prison on mandatory supervision, but violated his parole and was sent back to prison. Meza was again released on September 25, 2002, on mandatory supervision, as dictated by statute. Meza filed this lawsuit on December 5, 2005, alleging that Defendant parole officers, Collier and Livingston, violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and his constitutional rights. In his Third Amended Complaint, Meza added the same charges against various defendants who work for the Texas Board of Pardon and Paroles ("the TBPP Defendants").

Defendants Livingston and Collier jointly filed a motion to dismiss the claims against them in their official capacities and Collier filed a motion to dismiss in his individual capacity. In a Report and Recommendation by this Court – adopted by Judge Yeakel – it was recommended that Collier's and Livingston's motions should be granted in part and denied in part. While Judge Yeakel adopted the Report and Recommendation, he ordered further briefing on Meza's nascent due process and equal protection clause claims. (Clerk's Doc. No. 52 at 8-9.) On January 29, 2007, this Court issued an order establishing a briefing schedule for Livingston and Collier to further brief the due process and equal protection issues. (Clerk's Doc. No. 69.) They replied by filing their Second Motions to Dismiss on these issues on February 7, 2007. (Clerk's Doc. No. 73.) Meza responded on February 19, 2007 (Clerk's Doc. No. 86), and the Defendants replied on March 8, 2007 (Clerk's Doc. Nos. 103, 104).

A week later, Collier and Livingston – and Plaintiff – also filed summary judgment motions making many of the same arguments. Therefore, Judge Yeakel dismissed Collier and Livingston's motions to dismiss, *see* Clerk's Doc. No. 157, and referred the pending summary judgments motions to this Court for a Report and Recommendation. However, there remain outstanding motions to dismiss that this Report and Recommendation will resolve: the TBPP Defendant' motions to dismiss and Collier's Third Motion to Dismiss (filed to address arguments he states he raised in his earlier motion to dismiss, but not in his summary judgment motion).

Meza's Third Amended Complaint alleges that the Defendants have violated his equal protection and due process rights in a variety of ways. Meza alleges that he has not been given the same opportunities as other supervisees to acquire a job, obtain a driver's license, or receive education such that his rights under the Equal Protection and Due Process Clauses of the Fourteenth

2

Amendment have been violated. He further contends that sex offender conditions were imposed upon him without due process, because his attorneys (who Defendants knew represented him) were not given notice of the intent to impose such conditions, and because his objections to those conditions were ignored. Meza also alleges that while in prison he has become a devout (non-denominational) Christian. He argues that his rights under RLUIPA, 42 U.S.C. § 2000cc, are violated by conditions and regulations requiring that: (1) he wear his prison uniform to attend religious services; (2) he is prohibited from leaving the jail to attend church services (unlike other parolees); and (3) he was prohibited from leaving the jail to attend his cousin's funeral. Meza seeks compensatory and punitive damages, declaratory judgment, and injunctive relief.

## II.  ANALYSIS

The Court will first discuss the Texas Board of Pardons and Paroles Defendants' motions and then will take up the arguments specific to Collier's motion to dismiss the claims against him in his individual capacity.

**A.     Standard of Review.**

Under Federal Rule of Civil Procedure 12(b)(6), "a claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005). "A district court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.'" *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653-54 (5th Cir. 2004). The complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "However, conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).

**B.     Texas Board of Pardons and Paroles Defendants' Motions to Dismiss**

The Texas Board of Pardons and Paroles Defendants ("the TBPP Defendants") – Rissie Owens, Jose Aliseda, Charles Aycock, Conrith Davis, Jackie DeNoyelles, Linda Garcia, and Juanita M. Gonzales – move to dismiss all of the claims against them, on several grounds. *See* Clerk's Doc. No. 130, 150. First, they claim that the equal protection claim is not properly stated. Next, they assert that Meza has failed to state the elements of a RLUIPA claim. Third, they assert that the due process claim is lacking because the restrictions imposed on Meza are permitted, and because he was given notice of the intent to impose sex offender restrictions, and an opportunity to be heard. Finally, the TPBB Defendants assert that they are entitled to Eleventh Amendment immunity.

      **1.     Equal Protection "Class of One" Claim.**

In their first argument, the TPBB Defendants' contend that Meza has failed to state an equal protection claim. Meza is proceeding under the *Village of Willowbrook v. Olech* "class of one" equal protection theory, which requires that he show he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. 528 U.S. 562, 564 (2000). In his briefing, Collier relies on *Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000), which puts some gloss on *Olech*. *Bryan* held that in "selective enforcement" equal protection claims the plaintiff must show "an improper motive, such as racial animus . . . ." *Id.* at 277. The TBPP Defendants argue that because Meza has not shown they acted with any improper motive, his claim should be dismissed.

This case, however, is not best described as a selective enforcement claim. The Fifth Circuit, in *Mikeska v. City of Galveston*, implied in a footnote that it had recognized an additional variety of class of one equal protection claim, "personal vindictiveness." 451 F.3d 376, 381 n.4 (5th Cir. 2006).[1] While the Fifth Circuit has not squarely addressed the issue, the Seventh Circuit has. In typically persuasive fashion, Judge Posner noted that if "a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Utilizing Justice Breyer's concurrence in *Olech*, 528 U.S. at 565-66 (agreeing with disposition but contending that there should be an "extra factor" requirement of "vindictive action" or the like to proceed under a "class of one" theory) (Breyer, J., concurring), Judge Posner stated that:

> to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position. We described the class of equal protection cases illustrated by *Olech* as 'vindictive action' cases and said that they require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant."

*Id*. (citation omitted).[2]

---

[1] A more accurate statement might be that the Fifth Circuit has recognized the *possibility* of such a claim but never expressly passed on it. *Parude v. City of Natchez* 72 Fed. App'x 102, 104-05 (5th Cir. 2003) (stating "that personal vindictiveness *might* be an improper motive in a selective enforcement case, but [we] ha[ve] never specifically addressed whether such a motive would be enough to support an equal protection claim without some other class-based discrimination"); *see also Beeler v. Rounsavall*, 328 F.3d 813, 817-818 (5th Cir. 2003) (declining to address issue).

[2] To muddy the waters further, the Fifth Circuit, in an unpublished opinion from 2002, *Shipp v. McMahon*, cited *Hilton* – in the context of a §1983 qualified immunity case to determine whether the right was clearly established at the time – for the "personal vindictiveness" equal protection theory, and stated that "the Court's earlier decision in this case, *Shipp I*, may or may not have

As Meza points out in his Response, in the years 2005 and 2006, TDCJ and TBPP released well over 1,000 individuals who had been convicted of murder. Of those, Meza is one of only two parolees placed under such strict conditions. At this procedural stage, there is nothing the Court can look to to determine the TBPP's motives in setting Meza's conditions, and the Court must take Meza's pleadings as true. Given this, and given the state of the law as just described, the Court believes that Meza has pled enough to continue with his equal protection claim.

### 2. Religious Exercise Claims under RLUIPA.

The TBPP Defendants also contend that Meza's RLUIPA claim against them must be dismissed because he has failed to plead facts that allege a "substantial burden" on his practice of religion. The relevant section of the RLUIPA states:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person:
>
> > (1)  is in furtherance of a compelling governmental interest; and
> >
> > (2)  is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc. Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). This requires the court to answer two questions: (1) is the burdened activity "religious exercise," and if so (2) is the burden "substantial?" *Id*.

---

extended" the class of one theory to police protection. 54 Fed. App'x 413, (5th Cir. 2002).

Under RLUIPA, "exercise of religion" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4), 2000cc-5(7)(A). The Supreme Court has said that ""[T]he 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (citation omitted).

It would appear that attending a funeral is a religious exercise as contemplated by RLUIPA. While the Court was unable to locate any cases directly addressing this issue, in the vast majority of well-established religions, funerals have great religious significance, and are marked with a religious ceremony. Accordingly, attending such a ceremony would appear to be as much an exercise of religion as attending normal sabbath services would be, and attendance at these services is plainly an exercise of religion under *Cutter*. 544 U.S. at 720. This conclusion is also consistent with other cases addressing what is an "exercise" of religion for RLUIPA purposes. *See e.g.*, *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2000) (sabbath and holy day gatherings qualify as religious exercise); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (observance of Ramadan a religious exercise); *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005) (rabbi's use of property for Torah study and celebration of Jewish holidays a religious exercise); *Maria v. Broaddus*, 2003 WL 21782633 (S.D.N.Y. 2003) (prisoner's belief in Nation of Gods and Earths religion (aka as the "Five Percenters" aligned with Black Muslim movement) was sincere and religious in nature and therefore was a religious exercise); *Mintz v. Roman Catholic Bishop of Springfield*, 424 F. Supp.2d 309, 318-19 (D. Mass. 2006) (holding that Catholic church's application for permit to construct parish center that is central to church programs and services is religious exercise).

The more problematic issue for Meza is whether the burden imposed on his exercise of religion when he was prevented from attending his cousin's funeral was "substantial." On this issue, Meza's claim fails. Taking as true all of the facts pled be Meza, the only service he complains he was prevented from attending was his cousin's funeral. His Third Amended Complaint fails to identify what sort of service the funeral was, other than a "mass." He identifies himself as a "Christian." Thus, assuming that the funeral services consisted of a Catholic mass and burial services,[3] it is not even clear from the complaint that Meza was prevented from attending services of his own church when he was not allowed to attend the funeral. Regardless, even giving him the benefit of that assumption, the sole service he complains he was prevented from attending was this funeral. His complaint affirmatively establishes that he *is* permitted to attend other services (Clerk's Doc. No. 96 at ¶ 43). While there is no case law addressing what the boundaries are regarding when one's exercise of religion becomes substantially impaired, it is clear where this case falls. The Court can say as a matter of law that a complaint alleging a supervisee was prevented from attending only one religious ceremony over a several year period fails to state a claim that the supervisee's exercise of religion has suffered a "substantial" burden.

Meza's other complaint under RLUIPA relates to the requirement that he attend worship services in TCCC – in his prison garb – and not, like other parolees, out in the community. Meza somewhat conflates his complaints here, but the issue is whether his allegation that wearing a prison uniform while attending service at TCCC is a substantial burden on his exercise of religion. The Court finds it is not. Meza's complaint in this regard is stated in conclusory terms, and he must

---

[3]The complaint alleges that Meza was prevented from attending a "funeral mass and services." Clerk's Doc. No. 96 at ¶ 44. From the use of the term "mass," the Court could assume the service was Catholic (or perhaps Anglican or Episcopalian).

make more than simple assertions. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss). He has completely failed to plead any facts that his clothing is important to the exercise of his religion (as it might be if he were, for example, an Hassidic Jew), or to explain how wearing prison garb interferes with his religious exercises (other than to assert he considers it to "demean his religious activities"). Again, taking all of the allegations of his complaint as true, as a matter of law Meza's complaint regarding having to attend services in his prison garb fails to state a claim under RLUIPA.[4]

### 3. Due Process Claims.

The TBPP Defendants next argue that Meza's due process claims should be dismissed. Meza contends that collectively, the restrictions placed on him violate his due process rights. *Sandin v. Conner* is the touchstone case here. 515 U.S. 472 (1995). There, the Court held that States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraints which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id*. at 483- 484. After *Sandin*, it is clear that the touchstone of the inquiry is the nature of the challenged conditions "in relation to the ordinary incidents of prison life." *Id*. at 484. "Prisoners do not shed all constitutional rights at the prison gate." *Coleman v.*

---

[4]To the extent Meza complains that TBPP refuses to permit him to attend services away from the TCCC, but allows other supervisees to leave for that purpose, that claim is properly considered as part of his equal protection and due process claims. Again, because he is permitted to attend services at TCCC, and because he fails to allege any burden imposed by attending services there as opposed to in the community, this restriction does not state a claim under RLUIPA.

*Dretke*, 395 F.3d 216, 221 (5th Cir. 2004). Despite the restrictions imposed by incarceration, the Due Process Clause guarantees a prisoner some process before the government can impose conditions that are qualitatively different from the punishment characteristically suffered by a prisoner and which have stigmatizing consequences. *Id*.

Meza complains that sex offender restrictions were placed on him without proper notice and hearing, as required by *Coleman*. 395 F.3d at 223-24. The TBPP Defendants contend that Meza was indeed given the requisite level of due process because he was notified of the decision and was given an opportunity – which he took advantage of – to respond. They further contend that *Coleman* does not require that Meza's attorneys be notified, so it is irrelevant that the Defendants failed to do so here.

This is not an issue that should be resolved at the Rule 12(b)(6) stage of the proceedings. The *Coleman* Court concluded that:

> The Department may condition Coleman's parole on sex offender registration and therapy only if he is determined to constitute a threat to society by reason of his lack of sexual control. Absent a conviction of a sex offense, the Department must afford him an appropriate hearing and find that he possesses this offensive characteristic before imposing such conditions. This court was told at oral argument that evidence of Coleman's lack of sexual control exists. None appears in the record, however, and no contention is made that Coleman has been afforded a hearing meeting the requirements of due process.

*Id*. at 225. There are too many facts that are not developed at this point to determine whether the process afforded Meza satisfied due process requirements. *Coleman* seems to require a hearing and it is far from clear from the pleaded facts whether Meza received one. There is also no evidence in the record that a lack of sexual control exists in Meza's case. Moreover, simply noting, as the TBPP Defendants do, that *Coleman* did not explicitly say that noticing an attorney was required proves

nothing. That was not an issue in that case. All of these issues need factual development and further briefing by the parties.

Tied into this is Meza's due process claim that covers the other restrictions imposed on him, such as not being given the same opportunities as other supervisees to acquire a job, obtain a driver's license, receive education, or attend church services. The TBPP Defendants argue, somewhat puzzlingly, that "[s]upervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large" (citing *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)). But of course the issue here is not whether Meza's parole restrictions comport with due process vis-a-vis the general public; it is whether they violate his constitutional rights vis-a-vis the restrictions placed on other supervisees. Taking Meza's pleadings as true, Meza has pled enough to hurdle the low bar of a Rule 12(b)(6) motion to dismiss. He has alleged several restrictions that appear qualitatively different than those imposed on other supervisees, thus stating a claim under *Sandin v. Conner*.

### 4. Eleventh Amendment.

The last issue is whether the TBPP Defendant are entitled to Eleventh Amendment immunity on Meza's claims. Meza contends that because he is only seeking injunctive and declaratory relief against the TBPP Defendants, the Eleventh Amendment is inapplicable. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). The TBPP Defendants argue that "Meza is requesting that Defendants be enjoined from requiring him to wear a jail uniform in order to attend worship" and they have no authority over TCCC to tell it what to do – therefore, they are immune because it is beyond their authority. *See Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001) ("Thus, any probe into the existence of a Young exception should gauge: (1) the ability of the official to enforce the statute at

issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute").

However, the prison uniform requirement is clearly – as delineated above – not the only constraint about which Meza is complaining. His complaints are numerous and he has properly asked for only declaratory and injunctive relief. Under the Eleventh Amendment and *Ex Parte Young*, the TBPP Defendants are not immune from these claims. Indeed, the Defendants' argument is not an Eleventh Amendment argument at all. Rather, the TBPP Defendants are claiming that they are not the proper defendants on this claim. Whether that is in fact true is an issue that can be dealt with at the summary judgment or trial stage, but it does not entitle the Defendants to immunity from suit.

In sum, the Court recommends that the TBPP Defendants' Motions to Dismiss be granted as to Meza's RLUIPA claims, and be denied as to all other claims.

**B.    Collier's Third Motion to Dismiss**

In his motion to dismiss, Collier first argues that the Court need not reach Meza's constitutional claims because Meza is a "prisoner" for purposes of 42 U.S.C. § 1997e(e), which precludes all his claims. There are a number of steps to this argument. First, Collier states that Meza is on mandatory supervision. Second, Collier contends, because Meza is on mandatory supervision parole,[5] he is a prisoner for purposes of the Prison Litigation Reform Act (PLRA), 42 U.S.C.

---

[5]Mandatory supervision is "the release of an eligible inmate . . . so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5) (Vernon 2004). The parole panel must release an inmate on mandatory supervision when his calendar time plus accrued good-conduct time equals the maximum term to which he was sentenced. *Id.* § 508.147(a). Release on parole, on the other hand, is discretionary with the panel. *Id.* §§ 508.001(6); 508.141. Importantly, once released, an inmate on mandatory supervision is considered to be on parole. *Id.* § 508.147(b).

12

§ 1997e(e). This, Collier argues, means that Meza cannot seek compensatory damages because he has alleged no physical injury, a prerequisite under the statute for alleging any federal constitutional violation. Collier also notes that punitive damages are also not recoverable under the PLRA.

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). The Fifth Circuit has held that the following test is to be used in determining whether a litigant is a "prisoner" for purposes of the PLRA: (1) whether the person is "incarcerated or detained in any facility" and (2) if so, whether it is as a result of his criminal conviction. *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007). In *Jackson*, the litigant, who was "a mandatory supervisee of the Pardons and Paroles Division of the Texas Department of Criminal Justice, who reside[d] at a privately operated halfway house," was held to be a prisoner under the PLRA[6] *Id*. at 267. Here, Meza is a "mandatory supervisee" and is in a halfway house (the TCCC Del Valle Facility[7]). Given these important indistinguishable facts, the Court must find that Meza is a "prisoner" for purposes of the PLRA.

According to Collier this seals Meza's fate because § 1997e(e) states that "No federal civil action may be brought by a *prisoner* confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

---

[6] It is worth noting that the Fifth Circuit's definition of "prisoner" is contrary to other circuits' cases. *See Jackson*, 475 F.3d at 266 (distinguishing contrary holdings from the Eighth, Ninth, and Eleventh Circuits).

[7] Travis County Correctional Complex is run by the Travis County Sheriff's Office. According to Collier, this facility houses parolees and mandatory supervisees in lieu of a halfway house in Travis County that will take people who have been convicted of serious offenses.

42 U.S.C. § 1997e(e) (emphasis added). Therefore, the argument goes, Meza is a prisoner who has not alleged any physical injury, so his claim(s) must fail because he has no damages. In *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005), the court stated that:

> Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury. Thus . . . failure to allege physical injury falls squarely under § 1997e(e)'s bar, precluding his recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of the purported First Amendment violation.

However, it seems that Collier has not closely read Meza's Complaint. Meza is not asking for compensatory damages based on mental or emotional injury, but instead for lost wages. *See* Plaintiff's Third Amended Complaint at 10. Therefore, Collier's argument misconceives the issue.

Meza is also asking for punitive damages. Collier again attempts to trade on the above argument in this context; however, it fails here too: numerous courts of appeals have held that the 1997e(e) bar does not apply to constitutional claims for nominal and punitive damages. *See Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006); *Hubbard v. Taylor*, 399 F.3d 150, 167 (3rd Cir. 2005); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (nominal and punitive damages for First Amendment violation not barred); *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3rd Cir. 2000) (same); *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (any form of relief for First Amendment violations available, if not for mental or emotional injury); *Thompson v. Carter*, 284 F.3d 411, 418 (2nd Cir. 2002) (nominal and punitive damages available for deprivation-of-property claim); *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (compensatory, nominal or punitive damages available if premised on alleged unconstitutional conditions of pretrial confinement, and not emotional or mental distress suffered); *Doe v. Delie*, 257

F.3d 309, 314 n.3 & 323 (3rd Cir. 2001) (nominal and punitive damages available for violation of inmates' newly recognized right to medical privacy); *but cf. Harris v. Garner*, 190 F.3d 1279, 1282, 1287-88 & n. 9 (§ 1997e(e) precludes compensatory and punitive damages for alleged violations of Fourth, Eighth, and Fourteenth Amendments, but expressing no view on nominal damages), *vacated & reh'g en banc granted*, 197 F.3d 1059 (11th Cir.1999), *reinstated in pertinent part*, 216 F.3d 970 (11th Cir.2000); *Davis*, 158 F.3d at 1348-49 (compensatory and punitive damages for violations of constitutional right to privacy barred, but expressing no view on nominal damages).

Collier also argues that Meza has not alleged facts to show that Collier's conduct rises to the requisite level necessary to secure punitive damages. To warrant punitive damages, Meza must allege facts showing that Collier's conduct was egregious or reprehensible. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of North Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996). Taking Meza's allegations as true (as the Court must on a motion to dismiss), the question becomes whether Collier acted sufficiently egregiously so as to permit punitive damages when he prevented Meza from: (1) obtaining a job by sending armed guards with him to interviews and insisting that an armed guard would have to be with him at work; (2) receiving an education; (3) getting computer training (Meza has been incarcerated since 1982); and (4) getting a driver's license. Meza alleges that these requirements are not imposed on any other supervisee, and are the result of Collier taking a "special interest" in his case.

Applying the liberal standard of Rule 12, the Court concludes that these allegations are sufficient to support a claim for punitive damages. In *State Farm*, the Court said, "We have instructed courts to determine the reprehensibility of a defendant by considering whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a

15

reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. While it is difficult to compare and contrast fundamental rights protected in the Constitution, it is probably fair to say that, save for life, liberty is the most protected, cherished right preserved by our founding document. Arbitrary restrictions on liberty, imposed based upon a person taking a "special interest" in a supervisee's case, may rise to a level sufficient to permit the recovery of punitive damages. Whether that in fact has happened in this case is something for a later day; at this stage of the proceedings the Court must accept Meza's pleadings as true, and those pleadings are sufficient to state a claim for punitive damages.

Collier's final argument is that Meza's RLUIPA claim should be dismissed because the statute does not contemplate recovery of damages against individuals and Meza is seeking compensatory and punitive damages against Collier. Although it is not clear from the complaint that Meza is asking for compensatory and punitive damages against Collier for RLUIPA violations, Collier is, in any event, correct that RLUIPA governs the conduct of the government, not individuals. *See Gooden v. Crain*, 405 F. Supp.2d 714, 723 (E.D. Tex. 2005) (statute only provides for relief "against a government").[8] Therefore, if Meza is asserting a RLUIPA claim against Collier, it is recommended that it be dismissed.

---

[8]However, it is unclear whether the statute prohibits damages *in toto*, as Collier intimates. *See id.*; *see also Smith v. Haley*, 401 F. Supp.2d 1240, 1245-47 (M.D. Ala. 2005) (noting that it is unclear whether damages are unavailable in addition to injunctive relief).

In sum, then, Collier's argument that all of Meza's claims should be dismissed because he is a prisoner is rejected, but it is recommended that Meza's RLUIPA claim, if one in fact was pled against Collier, be dismissed against Collier in his individual capacity.[9]

## RECOMMENDATION

The Court **RECOMMENDS** that the Texas Board of Pardons and Paroles Defendants' Motions to Dismiss (Clerk's Docket Nos. 130 & 150) be **GRANTED IN PART, and DENIED IN PART**. The Court recommends that the Motions to Dismiss be **GRANTED** as to Meza's RLUIPA claims (and any claims for damages thereunder). The Court recommends that these Motions to Dismiss be **DENIED** as to all other claims.

The Magistrate Court further **RECOMMENDS** that Defendant Collier's Third Motion to Dismiss (Clerk's Docket No. 162) be **GRANTED IN PART, and DENIED IN PART**. The Court recommends that the Motion to Dismiss be **GRANTED** as to Meza's RLUIPA claims (and any claims for damages thereunder). The Court recommends that the Motion to Dismiss be **DENIED** as to all other claims, namely the equal protection claims and due process claims based on alleged differential treatment.

---

[9]Inexplicably, Collier contends in his Third Motion to Dismiss that he did not raise a qualified immunity argument in his motion for summary judgment, and he was therefore raising that argument for resolution. Clerk's Doc. No. 162 at 1-2. That is clearly incorrect, however, as a qualified immunity argument is quite plainly raised in the summary judgment motion under the heading "Defendant Collier is Entitled to Qualified Immunity." *See* Defendant Collier's Motion for Summary Judgment with Brief in Support Clerk's Doc. No. 110 at 9. The Court will therefore address the qualified immunity argument when it addresses the summary judgment motion.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 5th day of June, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE